[Cite as *State v. Adams*, 2014-Ohio-3432.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2013 CA 61 |
| | | 2013 CA 62 |
| v. | : | |
| | | T.C. NO. 13CR373 |
| BILLY K. ADAMS | : | 13CR150 |
| Defendant-Appellant | : | (Criminal appeal from Common Pleas Court) |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the _____8th_____ day of _____August_____, 2014.

· · · · · · · · · ·

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 W. Dorothy Lane, Suite 209, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, P.J.

        {¶ 1}   Billy K. Adams was convicted after a jury trial in the Greene County Court of Common Pleas of five counts of rape in violation of R.C. 2907.02(A)(1)(b), one count of rape in violation of R.C. 2907.02(A)(2), and two counts of gross sexual imposition

in violation of R.C. 2907.05(A)(4). These convictions concerned two step-daughters (Children #4 and #5), who were minors at the time of the offenses.[1] Adams also pled no contest to three additional counts of gross sexual imposition concerning three additional children. Adams received an aggregate sentence of 40 years in prison.

{¶ 2} Adams appeals from his convictions, claiming that the broad time frames in the indictments and the bills of particulars denied him due process and that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed in part and vacated in part, and the matter will be remanded for resentencing on Count 10 in Case No. 2013 CR 150 and Counts 1, 3 and 6 in Case No. 2013 CR 373.

## I. Charged Offenses and Errors in Sentences

{¶ 3} Adams was indicted in Case No. 2013 CR 150 on eight counts of rape in violation of R.C. 2907.02(A)(1)(b), one count of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), and five counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). The counts involved five different children, with the offenses occurring between various dates ranging from 1998 until 2013. A few months later, in Case No. 2013 CR 373, Adams was charged with eight additional counts of rape and gross sexual imposition involving Child #4.

{¶ 4} The charges concerning Children #1-3 were severed, and Adams was tried before a jury on the charges related to Children #4 and 5. The jury found him guilty of one

---

[1] Children #4 and #5 were adults when the trial occurred. For consistency, we will refer to them as children throughout the opinion.

count of gross sexual imposition regarding Child #5. With respect to Child #4, Adams was found guilty of five counts of rape in violation of R.C. 2907.02(A)(1)(b), one count of rape in violation of R.C. 2907.02(A)(2), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). Several charges had been dismissed at the conclusion of the State's case-in-chief pursuant to Crim.R. 29, and Adams was acquitted of several others. As to Children #1-3, Adams subsequently pled no contest to one count of gross sexual imposition for each child. The remaining charges concerning those children were dismissed.

{¶ 5} In Case No. 2013 CR 150, the trial court sentenced Adams to 10 years in prison for the two rapes and, on Count 10, to 18 months in prison for gross sexual imposition (which the court incorrectly stated was a fourth-degree felony). The sentences in Case No. 2013 CR 150 were ordered to be served concurrently with each other, for a total of ten years, and consecutively to the sentence imposed in Case No. 2013 CR 373.

{¶ 6} In Case No. 2013 CR 373, the court sentenced Adams on Counts 1-3 and 5-6 and imposed an aggregate 30-year sentence. However, the offenses that the court identified under Counts 1, 3, and 6 did not correspond to the offenses listed in the indictment for Case No. 2013 CR 373. (The offenses did correspond to Counts 1, 3, and 6 in the indictment for Case No. 2013 CR 150; Counts 2 and 5 are the same in both cases.) The trial court imposed an 18-month sentence for gross sexual imposition for Count 1, a 10-year sentence for rape for Count 3, and a 36-month sentence for gross sexual imposition for Count 6. The court should have imposed sentences for rape, gross sexual imposition, and rape for Counts 1, 3, and 6, respectively. A summary of Adams's charges and their dispositions is provided in Appendix A, attached.

**{¶ 7}** In its appellate brief, the State states that the trial court made errors regarding its sentencing on Count 10 in Case No. 2013 CR 150 and on Counts 1, 3, and 6 in Case No. 2013 CR 373. The State suggests that, "if the Court feels it necessary to fix this apparent error, the proper remedy would be to remand this case to the trial court for resentencing." Adams did not respond to the State's suggestion.

**{¶ 8}** A reading of the sentencing transcript reflects that the trial court believed that it was sentencing Adams for gross sexual imposition as a fourth-degree felony when it imposed an 18-month sentence for gross sexual imposition on Count 10 in Case No. 2013 CR 150; Adams was convicted of gross sexual imposition as a third-degree felony in that count.

**{¶ 9}** In addition, the trial court was apparently mistaken regarding which offenses corresponded to Counts 1, 3, and 6 in Case No. 2013 CR 373; it appears that the trial court inadvertently referred to the indictment for Case No. 2013 CR 150 when sentencing for Case No. 2013 CR 373. The trial court erred when it imposed sentences for gross sexual imposition for Counts 1 and 6, which were actually counts of rape, and for rape for Count 3, which was actually a count of gross sexual imposition.

**{¶ 10}** Upon review of the record, we conclude that these errors must be corrected. The sentences for Count 10 in Case No. 2013 CR 150 and for Counts 1, 3, and 6 in Case No. 2013 CR 373 must be vacated, and the matter will be remanded to the trial court for resentencing on those counts.

## II. Notice of Dates of Alleged Offenses

**{¶ 11}** Adams's second assignment of error states:

"The broad timeframe of the indictment and the bill of particulars denied the Appellant his right to due process and a fair trial."

**{¶ 12}** Adams was convicted of one count regarding Child #5 and seven counts regarding Child #4. The sole count regarding Child #5, Count 10 of Case No. 2013 CR 150, alleged gross sexual imposition by Adams between the dates of January 1, 1998 and January 17, 2005. Two of the rape counts regarding Child #4 (Counts 12 and 13 of Case No. 2013 CR 150) were alleged to have occurred between January 1, 1995 and July 21, 2003. Two other counts of rape and one count of gross sexual imposition of Child #4 (Counts 1, 2, and 3 of Case No. 2013 CR 373) were alleged to have occurred between January 1, 1999 and December 31, 2003. Two additional rapes (Counts 5 and 6 of Case No. 2013 CR 373) were alleged to have occurred between July 22, 2002 and July 21, 2003 and between July 22, 2003 and July 21, 2004, respectively.

**{¶ 13}** At Adams's request, the State provided a bill of particulars for the offenses. In Case No. 2013 CR 150, the State specified that Count 10 involved conduct at a residence on Cincinnati Avenue. It alleged that, while in the bathroom, Adams rubbed Child #5's vagina with his fingers while she was in the bathtub. The bill of particulars further stated that, "[a]t the time of the crime, the victim was under the age of 13." The bill of particulars further indicated that Counts 12 and 13, concerning Child #4, occurred in Xenia, Ohio. Count 12 alleged that Adams placed his tongue inside Child #4's vagina and that she was under the age of 13 at the time. Count 13 alleged that Adams made Child #4 "suck his penis with her mouth and tongue" and that Child #4 was less than 13 years old at the time of the offense.

{¶ 14} With respect to Case No. 2013 CR 373, which concerned only Child #4, the State's bill of particulars specified that Counts 1 and 2 concerned Adams's use of his finger to digitally penetrate Child #4's vagina while in the laundry room of a home on Cincinnati Avenue, and Count 3 concerned Adams's placing his penis between Child #4's legs and thrusting it against her vagina until he ejaculated at the Cincinnati Avenue address. Count 5 concerned Adams's placing his mouth and tongue on and in Child #4's vagina at a residence on Thornhill Street. Count 6 alleged that Adams took Child #4 to a Greene County campground in a van and, while in the van, he forced Child #4's head to his groin area and forced her to suck his penis.

{¶ 15} The bills of particulars did not modify the date ranges set forth in the indictments for any of the offenses of which Adams was convicted.

{¶ 16} Prior to trial, Adams moved to dismiss the indictments on the ground that the date ranges in the indictments failed to provide adequate notice of the offenses. The trial court denied the motions. At the conclusion of Child #4's testimony at trial, Adams sought to dismiss Count 13 of Case No. 2013 CR 150, because Child #4 testified to a specific address and year in which that offense occurred, whereas the bill of particulars had not provided such specificity. The trial court denied the motion, stating that Adams had not shown that he was prejudiced by "the shortening of the timeframe."

{¶ 17} Adams claims that the inexactitude of the State's allegations prejudiced his ability to defend himself, and he asserts that the State had more specific information, as evidenced by the ages, specific acts, and locations in the house that Children #4 and #5 testified to at trial. Adams states that his attorney would have interviewed specific

witnesses had she known the details in advance.

{¶ 18} ] The date of an offense is not an element of an offense, but it may be relevant to provide adequate notice to the defendant for due process purposes. *In re C.M.*, 2d Dist. Montgomery No. 21363, 2006-Ohio-3741, ¶ 67. "A defendant is not prejudiced by the failure of an indictment to specify the dates and times upon which the charged offense allegedly occurred if such failure does not impose a material detriment to the preparation of a defense." *Id.*, citing *State v. Barnecut*, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist.1988). "Where the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error." *Barnecut* at paragraph one of the syllabus; *see also State v. Mundy*, 99 Ohio App.3d 275, 297, 650 N.E.2d 502 (2d Dist.1994) (the State's failure to provide specific dates for 14 counts of gross sexual imposition regarding three children over extended period of time was not prejudicial); *State v. Bell*, 176 Ohio App.3d 378, 2008-Ohio-2578, 891 N.E.2d 1280, ¶ 94-100 (2d Dist.).

{¶ 19} Adams's defense was that the children fabricated their allegations so that they would never have to live with him again. His defense did not rely on disproving that the alleged events occurred at specific dates and times; rather, it focused on the truthfulness of complainants. The bills of particulars generally provided Adams with details concerning the specific acts that allegedly occurred and specific locations for those acts, which placed Adams on notice of how he allegedly committed the offenses. Adams has not established

that specific dates and times were relevant to his defense and that his defense was hampered by the time frames included in the indictments and bills of particulars. Accordingly, we cannot conclude that the failure of the State to supply more specific dates deprived Adams of a fair trial or due process of law.

{¶ 20} Adams's second assignment of error is overruled.

### III. Sufficiency and Manifest Weight of the Evidence

{¶ 21} Adams's first and third assignments of error state:

"The evidence presented by the Appellee was insufficient to support the Appellant's convictions."

"The Appellant's convictions are against the manifest weight of the evidence."

{¶ 22} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 23} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is

more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 24}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175.

**{¶ 25}** Adams claims that there was insufficient evidence to support his convictions under Counts 1, 2, 5, and 6 in Case No. 2013 CR 373, all of which involved the rape of Child #4.[2] He also asserts that there was insufficient evidence to support his conviction for the forcible rape of Child #5, as alleged in Count 15 of 2013 CR 150 (verdict form #6);

---

[2] In his brief, Adams identifies the offenses by the count number used on the verdict forms, rather than by case number and the count number in the indictment. This apparently created some confusion, as the State's response addresses some gross sexual imposition charges, whereas Adams's brief discusses only rape charges.

Adams was acquitted of that count, and we need not address it.

{¶ 26} Counts 1 and 2 both involved the digital penetration of Child #4's vagina in the laundry room of the home on Cincinnati Avenue. Adams argues that the State's evidence was insufficient to support those convictions, because Child #4 provided no testimony to distinguish between the two counts.

{¶ 27} Child #4 testified that Adams performed multiple sex acts on her in the laundry room of the Cincinnati Avenue home. She stated that, on numerous occasions, he forced her to suck on his penis, licked her vagina, placed his penis between her legs and thrust back and forth, and digitally penetrated her vagina with his fingers. Discussing the digital penetration, Child #4 explained that Adams would have her lower her pants and underwear to her ankles. Sometimes Adams would have her turn around and he would penetrate her vagina with his fingers while she was standing up. Other times, Adams would have her sit down while he digitally penetrated her. While she was sitting down, Adams would move his finger up and down and asked her if she liked it and how it felt. Other times, Adams would tell her she was "dirty" while digitally penetrating her. Child #4 also described an incident when Adams penetrated her vagina with his finger while he had her lying down in the laundry room with her pants and underwear down to her ankles. Child #4 testified that Adams did not say anything during this incident. Based on Child #4's testimony, there was sufficient evidence of separate incidents of digital penetration to distinguish between the two counts of rape based on digital penetration at the Cincinnati Avenue address.

{¶ 28} In Count 5, the State alleged that Adams placed his mouth and tongue on

Child #4's vagina at a residence on Thornhill Street between the dates July 22, 2002 and July 21, 2003, while Child #4 was 12 years old. Adams contends that there was insufficient evidence that Child #4 was less than 13 years old when the offense was committed.

{¶ 29} The prosecutor asked Child #4 about the timing of the Thornhill Street abuse as follows:

PROSECUTOR: Okay. When you were 13 years old, did you go with Billy Adams to [his mother's] house?

CHILD #4: Yes, ma'am.

PROSECUTOR: And who else was in the home besides you and Billy Adams?

CHILD #4: No one.

* * *

PROSECUTOR: Okay. On this occasion that we're talking about when you were 13, who went with you to that house besides Billy Adams?

CHILD #4: No one.

* * *

PROSECUTOR: Okay. In relation to the 2003 Police report, this time at Billy's mother's home, was that before or after the Police report?

CHILD #4: That was before.

PROSECUTOR: Before the Police report was filed?

CHILD #4: Yes, ma'am.

(Tr. at 94-95.) Child #4 had previously testified that the police report was filed in 2003 "right before I turned 13." (Tr. at 84.) She later provided the date of the report as June 23,

2003. Child #4 was born in July 1990.

{¶ 30} Although Child #4's testimony had inconsistencies, the State presented evidence that the events at the Thornhill Street residence occurred prior to June 23, 2003, when Child #4 was 12 years old. Accordingly, there was legally sufficient evidence to establish that Child #4 was under the age of 13 when she was raped by Adams at that residence. Moreover, we cannot say that Adams's conviction for rape in violation of R.C. 2907.02(A)(1)(b) based on the events at the Thornhill Street home was against the manifest weight of the evidence. The jury could have reasonably believed Child #4's testimony that the rape occurred prior to the filing of the 2003 police report, and that the prosecutor's questions, which began with "when you were 13," were misstatements by the prosecutor.

{¶ 31} Count 6 involved Adams's driving Child #4 to a campground, where he forced her to suck his penis. Adams claims that the State failed to present sufficient evidence that the offense occurred in Greene County.

{¶ 32} "Venue relates to the right of a criminal defendant to be tried in the county in which the alleged offense occurred." *State v. Harris*, 6th Dist. Fulton No. F-04-005, 2005-Ohio-1779, ¶ 18; *see also* Ohio Constitution, Article I, Section 10; R.C. 2901.12. "If the state fails to produce evidence of proper venue, then the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 22. "'[I]t is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment.'" *Id.* at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E.

969 (1907), paragraph one of the syllabus.

{¶ 33} Child #4 testified on direct examination that Adams drove her in a large van to a campground, where he forced her to perform oral sex on him.   She described the route, saying:

> We went out toward the campground that we ended up living at later, but I didn't know where it was until a few years down the line when we had went there and moved there, I noticed the location. * * *
>
> I think it's called 42 is the highway that we would take. * * * It was straight mostly.   There was one turn, and then the next turn would have been to go into the campgrounds as far as I remember.

Earlier in her testimony, Child #4 testified that when she was 14 or 15 years old, after living with her paternal grandparents, she moved with her mother, maternal grandmother, younger brother, and Adams to a campground in Yellow Springs called Frontier.

{¶ 34} On cross-examination, Child #4 stated that she and Adams drove on the highway for approximately 15 minutes while in the van, and that she knew that they were not heading toward Dayton, because she knew how to get to Dayton then.   During redirect examination, Child #4 testified that she drove from Xenia to the campground and returned to Xenia after Adams forced her to perform oral sex in the van.   Detective Fred Meadows of the Xenia Police Department testified that Xenia is in Greene County, Ohio; he was not asked whether Yellow Springs is in Greene County.

{¶ 35} Child #4 did not expressly testify that the campground was located in Yellow Springs.   However, construing the evidence in the light most favorable to the State,

the jury could have reasonably concluded that the campground was located in Yellow Springs and, based on Child #4's testimony regarding the proximity between Xenia and the campground, that Child #4 was referring to the Yellow Springs located in Greene County. *See State v. Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 4 ("When testimony establishes a specific location without giving the name of the county, the court may take judicial notice that a location is in a particular county.") Moreover, we cannot say that such a conclusion is against the manifest weight of the evidence.

**{¶ 36}** Adams further asserts that all of his convictions were against the manifest weight of the evidence, because Children #4's and #5's testimonies were the only evidence that Adams committed the offenses against them. Adams states that the alleged offenses generally occurred in small homes while other individuals were there, yet there were no other witnesses to the offenses. Adams asserts that the jury lost its way in crediting the children's testimony.

**{¶ 37}** The credibility of the witnesses and the weight to be given to their testimony were matters for the jury, as the trier of fact, to determine. And there is no requirement that a rape victim's testimony be corroborated in order to support a conviction. *State v. Heilman*, 11th Dist. Trumbull Nos. 2004-T-133, 2004-T-135, 2006-Ohio-1680, ¶ 46, citing *State v. Gingell*, 7 Ohio App.3d 364, 365, 455 N.E.2d 1066 (1st Dist.1982). The jury did not lose its way simply because it chose to believe the testimonies of Children #4 and #5 that the offenses occurred. Adams's convictions were not against the manifest weight of the evidence.

## IV. Conclusion

{¶ 38}   The trial court's judgment will be affirmed in part and vacated in part.   The sentences for Count 10 in Case No. 2013 CR 150 and for Counts 1, 3, and 6 in Case No. 2013 CR 373 will be vacated, and the matter will be remanded to the trial court for resentencing on those counts.   In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Nathaniel R. Luken
William O. Cass, Jr.
Hon. Stephen A. Wolaver

## APPENDIX A
*State v. Billy K. Adams*
2d Dist. Greene Nos. 2013 CA 61 and 2013 CA 62

| CASE NO. | COUNT # (VERDICT #) | OFFENSE | DATES IN INDICTMT | CHILD ID # | RESULT | SENTENCE (OFFENSE) |
|---|---|---|---|---|---|---|
| 2013 CR 150 | 1 (1) | 2907.05(A)(1) GSI - F4 (force) | 1/1/1998-1/17/2006 | 5 | Not guilty | |
| 2013 CR 150 | 2 severed | 2907.02(A)(1)(b) Rape - F1 (<13) | 10/31/2011-1/31/2013 | 2 | Dismissed (plea) | |
| 2013 CR 150 | 3 severed | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/2010-1/1/2013 | 3 | Dismissed | |
| 2013 CR 150 | 4 severed | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/2010-1/1/2013 | 3 | Dismissed (plea) | |
| 2013 CR 150 | 5 severed | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/2010-1/1/2013 | 3 | Dismissed (plea) | |
| 2013 CR 150 | 6 severed | 2907.05(A)(4) GSI - F3 (<13) | 9/1/2011-11/30/2011 | 1 | No contest | 36 months GSI - F3 |
| 2013 CR 150 | 7 severed | 2907.05(A)(4) GSI - F3 (<13) | 10/31/2011-1/31/2013 | 2 | No contest | 36 months GSI - F3 |
| 2013 CR 150 | 8 severed | 2907.05(A)(4) GSI - F3 (<13) | 10/31/2011-1/31/2013 | 2 | Dismissed (plea) | |
| 2013 CR 150 | 9 severed | 2907.05(A)(4) GSI - F3 (<13) | 1/1/2010-1/1/2013 | 3 | No contest | 36 months GSI - F3 |
| 2013 CR 150 | 10 (2) | 2907.05(A)(4) GSI - F3 (<13) | 1/1/1998-1/17/2005 | 5 | Guilty | 18 months GSI - F4 |
| 2013 CR 150 | 11 (3) | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/1998-1/17/2005 | 5 | Not Guilty | |
| 2013 CR | 12 | 2907.02(A)(1)(b) | 1/1/1995-7 | | | 10 years |

| | | | | | | |
|---|---|---|---|---|---|---|
| 150 | (4) | Rape - F1 (<13) | /21/2003 | 4 | Guilty | Rape - F1 |
| 2013 CR 150 | 13 (5) | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/1995-7 /21/2003 | 4 | Guilty | 10 years Rape - F1 |
| 2013 CR 150 | 14 | 2907.02(A)(1)(b) Rape - F1 (<13) | 1/1/1995-7 /21/2003 | 4 | Dismiss ed (Crim.R . 29) | |
| 2013 CR 150 | 15 (6) | 2907.02(A)(2) Rape - F1 (force) | 1/1/1998-1 /17/2006 | 5 | Not Guilty | |
| 2013 CR 373 | 1 (7) | 2907.02(A)(1)(b) RAPE- F1 (<13) | 1/1/1999- 12/31/2003 | 4 | Guilty | 18 months GSI - F4 |
| 2013 CR 373 | 2 (8) | 2907.02(A)(1)(b) RAPE - F1 (<13) | 1/1/1999-1 2/31/2003 | 4 | Guilty | 10 years Rape - F1 |
| 2013 CR 373 | 3 (9) | 2907.05(A)(4) GSI - F3 (<13) | 1/1/1999- 12/31/2003 | 4 | Guilty | 10 years Rape - F1 |
| 2013 CR 373 | 4 | 2907.05(A)(4) GSI - F3 (<13) | 1/1/2002- 12/31/2003 | 4 | Dismiss ed (Crim.R . 29) | |
| 2013 CR 373 | 5 (10) | 2907.02(A)(1)(b) RAPE - F1 (<13) | 7/22/2002- 7/21/2003 | 4 | Guilty | 10 years Rape |
| 2013 CR 373 | 6 (11) | 2907.02(A)(2) RAPE - F1 (force) | 7/22/2003- 7/21/2004 | 4 | Guilty | 36 months GSI - F3 |
| 2013 CR 373 | 7 | 2907.02(A)(2) RAPE - F1 (force) | 6/18/2003- 12/31/2005 | 4 | Dismiss ed (Crim.R . 29) | |
| 2013 CR 373 | 8 | 2907.05(A)(1) GSI - F4 (force) | 6/18/2003- 12/31/2005 | 4 | Dismiss ed (Crim.R . 29) | |