[Cite as *State v. Speaks*, 2016-Ohio-522.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-48 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-734 |
| | : | |
| ROOSEVELT SPEAKS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 12th day of February, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Clark County Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
　　　Attorney for Plaintiff-Appellee

JOYCE M. DEITERING, Atty. Reg. No. 0005776, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Roosevelt Speaks, appeals from his conviction in the Clark County Court of Common Pleas after a jury found him guilty of aggravated robbery.

Speaks contends his conviction was not supported by sufficient evidence and was also against the manifest weight of the evidence. For the reasons outlined below, Speaks's conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On November 17, 2014, Speaks was indicted for one count of aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree. The charge stemmed from allegations that on October 27, 2014, and into the early morning of October 28, 2014, Speaks and his friend, James Scott, severely beat the victim, David Davidge, and stole Davidge's cell phone and phone accessories. Speaks pled not guilty to the charge and the matter proceeded to a jury trial on March 23, 2015. The following testimony was elicited at trial.

{¶ 3} Davidge, who was 19 years old at the time of trial, testified that Speaks and Scott were two of his classmates during high school. While he did not spend a lot of time with either Speaks or Scott, Davidge testified that he had been on good terms with both of them, particularly Scott, who he had known since Kindergarten. Davidge further testified that approximately one month prior to the incident at issue, he had seen Speaks and Scott at a birthday party for one of his wife's friends. Both Davidge and his wife, Brenda, testified that Davidge had friendly conversations with both Speaks and Scott during the party. Davidge also testified that he was carrying his cell phone at the party, an iPhone 5S, which was the latest model at the time.

{¶ 4} Continuing, Davidge testified that he had no further contact with either Speaks or Scott until the night of October 27, 2014. According to Davidge, Speaks called

his cell phone that night at 11:23 p.m. while he was shopping at Walmart with his wife, children, and brother-in-law. Davidge testified that during the call, Speaks asked for a ride and requested Davidge to pick him up at the Security National Bank near 1804 North Limestone Street in Springfield, Ohio. Davidge claimed that Speaks did not give any details about where he was going and that Speaks had never asked him for a ride before. Davidge also testified that he was uncertain how Speaks obtained his phone number, although he assumed that Speaks acquired it either through Facebook or a mutual friend. Nevertheless, Davidge agreed to give Speaks a ride, as Davidge described himself as a trusting individual who would help out anyone he knew, however remote.

{¶ 5} After receiving the call from Speaks, Davidge testified that he dropped off his family at their house and then drove to the area where Speaks requested to be picked up. Davidge then testified that he pulled into the Security National Bank parking lot, turned off his vehicle, and waited for a couple minutes before he saw both Speaks and Scott walking towards him. While Speaks did not tell Davidge that anyone else was going to be with him, Davidge testified that he assumed Speaks and Scott would be together. Davidge then testified that he rolled down his window and greeted the two men as they got inside his car, Speaks sitting in the front-passenger seat and Scott sitting in the back-passenger seat directly behind him.

{¶ 6} After a brief period of small talk with Scott, Davidge testified that Speaks "sucker punched" him in the face as he turned back around from talking. Davidge then testified that Speaks hit him several more times and demanded his wallet while Scott choked him from behind with his left arm. Davidge also testified that Speaks told him he had a gun. Although Davidge never saw the gun, he testified that Speaks pressed

something against his head, which felt like the barrel of a gun.

{¶ 7} Davidge testified that he told Speaks and Scott he did not have his wallet, which prompted both men to hit him several more times. Thereafter, Speaks and Scott asked Davidge for his cell phone, which, at the time, was located on the driver's seat between his legs. Davidge testified that he then felt Speaks and Scott take his cell phone and its attached accessories, i.e., a portable charger and a protective case. After taking those items, Speaks and Scott asked Davidge for his cell phone's security passcode. Davidge testified that he initially gave them his old passcode, which did not unlock his phone. When the phone would not unlock, Speaks and Scott hit him in the face again. After a few moments, Davidge was able to provide Speaks and Scott with the correct passcode. He testified that once the phone was unlocked, Speaks and Scott exited his vehicle and ran off in the same direction from which they had come. Davidge testified that during the incident, he was hit approximately 20 times.

{¶ 8} Following the attack, Davidge drove home and told his wife, Brenda, what had happened. Brenda testified that she remembered Davidge receiving a call on his cell phone while they were shopping at Walmart earlier that night. She claimed that after Davidge received the call, he told her he was going to meet with some friends, but did not tell her who he was meeting or where he was going. However, Brenda testified that when Davidge returned home later that night, his face was badly beaten and bloody.

{¶ 9} Both Davidge and Brenda testified that after Davidge returned home, they drove around the area looking for Speaks and Scott in an attempt to get his cell phone back. Shortly thereafter, they decided to call off the search when Davidge's pain from his injuries worsened and required him to go to the hospital for treatment. Hospital

records from Springfield Regional Medical Center were admitted into evidence and they indicate that Davidge arrived at the hospital at 12:37 a.m.

{¶ 10} Officer Jerome Montico of the Springfield Police Department testified that he met with Davidge at the hospital, interviewed him regarding the attack, and prepared an incident report based on what Davidge told him. According to Montico, Davidge identified Roosevelt Speaks and "Jay" Scott as his assailants. Montico testified that Davidge told him Speaks and Scott were not his close friends, but that he had decided to help them out after they had called needing a ride. Montico further testified that he asked Davidge if the incident was connected to any kind of drug dealing, which Davidge denied. Montico indicated that he believed Davidge was being truthful, and noted that Davidge was not intoxicated or impaired during the interview. Montico also observed that Davidge had sustained injuries consistent with how he described the attack.

{¶ 11} Officer Jerrod Osborn of the Springfield Police Department also testified that he met Davidge at the hospital and took photographs of his injuries. Osborn's photographs were admitted into evidence and they depicted injuries to Davidge's face, neck, arms, and chest. The photographs show that Davidge's face was bloody and swollen, especially his lips and nose. The photographs also show severe bruising around Davidge's right eye and abrasions on his chest and neck. The hospital records admitted into evidence indicate that Davidge suffered from a broken nose, facial contusion, neck abrasion, and a subconjunctival hematoma in his right eye. Davidge also testified that he had to have surgery to reset his nose, and that he will likely require more surgery in the future because he is still unable to breathe normally out of his left nostril.

{¶ 12} The investigating detective, Ron Jarod, also testified at trial. Jarod testified that he received the incident report and interviewed Davidge on October 28, 2014. According to Jarod, the version of events Davidge relayed to him were consistent with what was contained in the incident report. Jarod also testified that he showed Davidge photographs of Speaks and Scott, and that Davidge identified them as his assailants. In addition, Jarod testified that he had requested video footage from Security National Bank's security cameras, but that the relevant footage had already been deleted at the time of the request. Jarod also reviewed Davidge's phone records and confirmed that Davidge had received a call at 11:23 p.m. on October 27, 2014. Jarod claimed that he attempted to identify the caller by tracing the phone number that had called Davidge, but explained that he was unable to do so because of the type of phone data plan the caller used. Jarod further testified that neither Davidge's cell phone nor any weapon was ever discovered in Speaks's possession.

{¶ 13} While Davidge's cell phone was never recovered, Davidge and his wife testified that the day after the attack, they used the "Find My iPhone" application to track Davidge's cell phone through his account number. A few days later, the application showed a signal locating Davidge's cell phone at 918 Sunset Avenue, Springfield, Ohio. Upon seeing this, Davidge and Brenda testified that they called and informed the police about the location of Davidge's cell phone and eventually met the police at the Sunset Avenue address. Detective Jarod also confirmed that Davidge went to the Sunsent Avenue address in an attempt to retrieve his cell phone. Davidge, however, testified that the officers were unable to retrieve his cell phone because 918 Sunset Avenue is an apartment complex with multiple apartment units, which made it impossible to determine

the exact location of his phone.

{¶ 14} It is undisputed that Speaks lived with his mother, Denise Porter, in an apartment at 918 Sunset Avenue. Porter, however, testified that Speaks was at home with her on the night of the attack. Porter further testified that neither she nor Speaks has a car, and that Speaks walks to the bus stop to ride to work. Porter also admitted that Speaks and Scott are friends, but claimed that she did not like her son hanging out with Scott, who is not allowed in their home. Porter also claimed that she had never seen Speaks in possession of an iPhone. Oddly enough, Porter was unable to provide Speaks's cell phone number at trial, as she claimed she did not know his number and that it was not saved in her own cell phone. Porter also had no explanation for why Speaks's alibi was not disclosed to investigators until January 20, 2015, approximately three months after the attack on Davidge.

{¶ 15} After the presentation of evidence, the jury deliberated and found Speaks guilty of aggravated robbery as charged. The trial court then sentenced Speaks to 11 years in prison. Speaks now appeals from his conviction, raising two assignments of error for review.

**First and Second Assignments of Error**

{¶ 16} For purposes of convenience, we will address Speaks's two assignments of error together. They are as follows:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL WHEN THERE IS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF

AGGRAVATED ROBBERY.

II.    APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 17} Under the foregoing assignments of error, Speaks challenges the legal sufficiency and manifest weight of the evidence supporting his conviction.   Specifically, Speaks contends that the State failed to present evidence establishing that he was the person who committed the crime, as he claims the State's evidence was devoid of any proof that he was present at the bank parking lot on the night in question.   Speaks also contends that the weight of the evidence does not establish that he inflicted the injuries on Davidge or that he stole Davidge's cell phone.   We disagree.

{¶ 18} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."   (Citations omitted.)   *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).   "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.)   *Id.*

{¶ 19} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence

is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 20} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 21} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a

finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 22} As noted above, Speaks was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3), which states that:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

Therefore, in order to convict Speaks of aggravated robbery in violation of R.C. 2911.01(A)(3), the State was required to prove that, while committing a theft offense as defined in R.C. 2913.01, Speaks inflicted or attempted to inflict serious physical harm on Davidge.

{¶ 23} The definition of "theft offense," pursuant to R.C. 2913.01(K), includes theft in violation of R.C. 2913.02, as well aggravated robbery in violation of R.C. 2911.01. Theft occurs when a person, with purpose to deprive the owner of property, knowingly obtains or exerts control over the property, without consent of the owner or by threat or intimidation. R.C. 2913.02(A). A person acts with a particular purpose when "it is [his] specific intention to cause a certain result." R.C. 2901.22(A).

{¶ 24} Serious physical harm to persons is defined in R.C. 2901.01 and includes:

(a)     Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b)     Any physical harm that carries a substantial risk of death;

(c)     Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d)     Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e)     Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(a)-(e).

{¶ 25} In this case, Davidge's trial testimony establishes that Speaks committed a theft offense by depriving Davidge of his cell phone and cell phone accessories without his consent when he was in his car waiting to give Speaks a ride during the late night hours of October 27, 2014, and into the early morning hours of October 28, 2014.

{¶ 26} Additionally, Davidge's testimony, the photographic evidence, and the hospital records clearly establish that Davidge suffered serious physical harm as a result of the theft offense.  The photographic evidence shows that Davidge's face was disfigured, as it was swollen, bloodied and bruised.  The hospital records admitted into evidence also indicate that Davidge suffered from a broken nose, facial contusion, neck abrasion, and a subconjunctival hematoma of the right eye.   In addition, Davidge testified that he had to have surgery to reset his nose, and that he will likely require more surgery

in the future because he is still unable to breathe normally out of his left nostril.

{¶ 27} Speaks does not contest the extent of Davidge's injuries; rather, he argues that there is insufficient evidence to establish he was one of the assailants at the bank parking lot on the night in question, and that the weight of the evidence does not establish that he was the person who injured and robbed Davidge. However, Davidge specifically testified that he knew Speaks from high school, and on the night in question, Speaks requested a ride, got into Davidge's vehicle, attacked him, and stole his cell phone and phone accessories. Phone records admitted into evidence confirmed that Davidge received a call on the night in question. Davidge's wife and the investigating officers also provided testimony that confirmed Davidge's version of events. Moreover, while Davidge's cell phone was never recovered, testimony from Davidge, his wife, and Detective Jordan establish that the "Find My iPhone" application detected Davidge's cell phone somewhere inside the apartment complex located at 918 Sunsent Avenue, which is where Speaks resided with his mother.

{¶ 28} Furthermore, while there were no eye-witnesses to the offense or any video footage showing Speaks at the scene beating and robbing Davidge, the jury was free to choose to believe Davidge's testimony that it was Speaks who beat and robbed him. The jury was also free to disbelieve the testimony of Speaks's mother, who claimed that Speaks was with her at the time of the offense. Here, the record indicates the jury found Davidge's version of events more credible. Because the jury is in the best position to judge witness credibility, and because it is not patently apparent from the record that the jury lost its way in finding Speaks guilty of aggravated robbery, we will not disturb the jury's verdict on appeal.

**{¶ 29}** For the foregoing reasons, we conclude that Speaks's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, both of Speaks's assignments of error are overruled.

## Conclusion

**{¶ 30}** Having overruled both assignments of error raised by Speaks, we hereby affirm his conviction for aggravated robbery.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Ryan A. Saunders
Joyce M. Deitering
Hon. Douglas M. Rastatter