[Cite as *State v. Reese*, 2020-Ohio-6957.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :    Appellate Case No. 28784
                                       :
v.                                     :    Trial Court Case No. 2019-CRB-5218
                                       :
MICHAEL L. REESE                       :    (Criminal Appeal from Municipal Court)
                                       :
    Defendant-Appellant            :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of December, 2020.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743 and ANDREW SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. No. 0074317, 7501 Paragon Road, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Michael L. Reese, appeals from his conviction in the Dayton Municipal Court of domestic violence following a bench trial. In support of his appeal, Reese contends that the trial court's guilty verdict was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, Reese's judgment of conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On October 11, 2019, the State filed a complaint charging Reese with one count of assault in violation of R.C. 2903.13(A) and one count of domestic violence in violation of R.C. 2919.25(A), both misdemeanors of the first degree. The charges stemmed from allegations that during the early morning hours of October 7, 2019, Reese put his girlfriend, M.W., in a choke hold and punched her several times in the face, head, arms, and ribs while they were riding in the back seat of a friend's vehicle that was traveling through Dayton, Ohio. Reese pled not guilty to the charges and the matter proceeded to a bench trial.

{¶ 3} At trial, M.W., M.W.'s mother, and Officer John Ambrose of the Dayton Police Department testified during the State's case in chief. Reese's friend, Deeion Sandlin, and Reese's grandmother, Patricia Napier, testified in Reese's defense. Following this testimony, the trial court admitted the State's exhibits into evidence, which included photographs of injuries allegedly sustained by M.W. during the incident, and hospital discharge instructions given to M.W. after she received medical treatment for those injuries.

{¶ 4} After taking the matter under advisement, the trial court issued a decision

finding Reese guilty of both assault and domestic violence. During sentencing, the trial court found that the offenses were allied offenses of similar import that merged. The State elected to have Reese sentenced for domestic violence. Following the State's election, the trial court sentenced Reese to 180 days in jail with 150 days suspended. The trial court also imposed two years of probation, which included drug and alcohol testing, and ordered Reese to complete Montgomery County's Stop the Violence program. The trial court further ordered Reese to have no contact with M.W. and to pay a $100 fine and court costs.

{¶ 5} Reese now appeals from his judgment of conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 6} Reese contends that the trial court's judgment finding him guilty of assault and domestic violence was not supported by sufficient evidence and was against the manifest weight of the evidence. Due to the trial court's merger of the offenses, Reese was not convicted of assault, and we confine our discussion to the domestic violence offense. We disagree with Reese's assertion that his domestic violence conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

### Sufficiency of the Evidence

{¶ 7} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law." *State v. Caldwell*, 2d Dist. Montgomery No. 27856, 2018-Ohio-4639, ¶ 4,

citing *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10 and *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 8} In challenging the sufficiency of the evidence, Reese claims that the State failed to present evidence establishing that he injured M.W. on the night in question. Upon review, we find that the testimony of M.W. and the photographic evidence establish otherwise.

{¶ 9} M.W. testified that she and Reese began a romantic relationship with each other in December 2016. M.W. testified that beginning in August 2017, she and Reese lived together at a house in Miamisburg, Ohio, which they shared with Reese's grandmother. M.W. testified that she moved to her own apartment a year later in September 2018, but still continued her relationship with Reese.

{¶ 10} With regard to the incident in question, M.W. testified that during the early morning hours of October 7, 2019, she and Reese were riding in the back seat of a vehicle on their way home from a bar called Club Aces when a drunk Reese began aggressively pulling her hair in a sexual manner. M.W. testified that when she told Reese to stop, Reese grabbed her face and said: "You don't tell me what to do bitch." Trial Trans. p. 33. M.W. claimed that when she tried to push Reese's hand off her face, he became mad and put her in a choke hold with his arm around her neck. M.W. testified that Reese

then started hitting her with a closed fist on her head, face, ribs, arms, and side.

{¶ 11} M.W. testified that as Reese hit her over and over again, she tried to use her arm to block Reese's blows and to push his arm away. In doing so, M.W. testified that her thumb became dislocated. After being punched approximately 20 times, M.W. testified that she no longer recalled what happened in the vehicle. The last thing M.W. recalled from the ride was Reese's cousin Tommy (who is now deceased) saying: "Dude, stop, you're going to kill her." Trial Trans. p. 37. Thereafter, M.W. testified that she faintly remembered Reese assisting her into his house. M.W. testified that the next thing she remembered was waking up in Reese's bed crying because she was in so much pain.

{¶ 12} M.W. testified that after she woke up, Reese did not want to take her home because he was still sleeping. According to M.W., Reese became annoyed with her crying and told her to go downstairs. M.W. testified that when she went downstairs she asked Reese's grandmother to give her a ride home. M.W. testified that Reese's grandmother did not give her a ride home because Reese eventually came downstairs and agreed to drive her back to her apartment that morning.

{¶ 13} After Reese dropped M.W. off at her apartment, M.W. called her mother and asked her to come over. M.W. testified that her mother and sister arrived at her apartment that afternoon and took photographs of her injuries. The photographs were admitted into evidence as State's Exhibits 1 through 10. The photographs show that M.W. had two black eyes and bruises on her neck, arms, forearms, above her right temple, and underneath one of her breasts.

{¶ 14} M.W. testified that after taking the photographs, she went to the hospital to receive medical treatment for her injuries. M.W. testified that while at the hospital she

learned that she had suffered a concussion. M.W. also testified that because her thumb was dislocated, she had to wear a cast on her arm for a week. M.W. testified that after being treated and released from the hospital, she was provided with a packet of discharge instructions, which was admitted into evidence as State's Exhibit 11. The packet contained information indicating that M.W. was treated on October 7, 2019. The packet further indicated that M.W. was an assault victim with a concussion, bruising, chest pain, and a hand contusion.

{¶ 15} M.W. testified that on October 11, 2019, she obtained a protection order against Reese and went to the Dayton Police Department to report the assault. M.W. claimed that she did not go to the police immediately after the assault because she was terrified of Reese. According to M.W., Reese had on previous occasions threatened "to put [her] six feet under and bury [her] in the mountains" if she ever reported him. Trial Trans. p. 50. M.W. testified that when reporting the assault she spoke with Officer Ambrose, who took photographs of her injuries that were still visible. The photographs taken by Officer Ambrose were admitted into evidence as State's Exhibit 12. Those photographs depicted bruising, albeit fainter, on M.W.'s eyes, arms, neck, and head. The photographs also showed the cast that was placed on M.W.'s arm as a result of her dislocated thumb.

{¶ 16} Based on the foregoing testimony and evidence, there is no question that the State provided sufficient evidence of domestic violence under R.C. 2919.25(A). Domestic violence is committed when one "knowingly cause[s] * * * physical harm to a family or household member." R.C. 2919.25(A). A "family or household member" includes a "person living as a spouse." R.C. 2919.25(F)(1)(a)(i). A "person living as a

spouse" includes someone who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."   R.C. 2919.25(F)(2).

{¶ 17} Here, M.W.'s testimony and the photographs of her injuries supported the trial court's finding that Reese knowingly caused physical harm to her on the night in question.   Moreover, there was no dispute that Reese cohabited with M.W. within five years prior to the date of the incident, thus satisfying the "family or household member" element of the domestic violence charge.   Therefore, given the evidence presented at trial, Reese's sufficiency-of-the-evidence claim lacks merit.

*Manifest Weight of the Evidence*

{¶ 18} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."   (Citation omitted.)   *Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 12.   When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of facts " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "   *Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).   A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.   *Martin* at 175.

{¶ 19} "The fact that the evidence is subject to different interpretations does not

render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Therefore, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility "unless it is patently apparent that the trier of fac[t] lost its way in arriving at its verdict." (Citation omitted.) *Wilson* at ¶ 17.

{¶ 20} In challenging the manifest weight of the evidence, Reese simply claims that the trial court should have relied on the version of events testified to by his friend, Deeion Sandlin, and his grandmother, Patricia Napier.

{¶ 21} Sandlin testified that on the night in question she and her boyfriend were drinking at Club Aces with M.W., Reese, and Reese's cousin, Tommy. Sandlin testified that M.W. was not interested in socializing and sat by herself in the corner of the bar drinking vodka. Sandlin testified that their group eventually left Club Aces because M.W. went outside and started walking down the road saying that she was going home. Sandlin testified that her boyfriend drove her, Reese, and Tommy down the road to collect M.W.

{¶ 22} Continuing, Sandlin testified that M.W. was very irate and angry when she entered their vehicle. According to Sandlin, M.W. was throwing a tantrum like a child, flailing her arms, and being belligerent. Sandlin, who was in the front-passenger seat, testified that Reese and Tommy were sitting in the back of the vehicle with M.W. trying to protect themselves during her outburst. Sandlin testified that M.W.'s outburst lasted the

entire 30 minutes it took them to drive from Club Aces to Reese's house.   Sandlin testified that while Reese and M.W. argued during the ride, she never saw Reese physically attack M.W.

{¶ 23} Napier, Reese's grandmother, testified that on the morning in question, she woke up to the sound of M.W. and Reese yelling at each other in the dining room of her home.   Napier testified that when she approached them, she observed that M.W. was a little disheveled, slurred her speech, and smelled of alcohol.   Napier testified that their argument stopped when she told Reese to get in his bed upstairs and for M.W. get in Napier's bed on the ground floor.   However, shortly after separating them, Napier heard M.W. going up the stairs toward Reese's bedroom.   Napier testified that when she yelled for M.W. to come back downstairs, M.W. turned around and fell down the stairs.

{¶ 24} After M.W. fell, Napier claimed that she took M.W. back to her bedroom. Napier testified that a few minutes later, M.W. tried to go up the stairs again and fell once more.   Napier testified that she was not concerned that M.W. was injured after falling. Napier claimed that she did not see any injuries on M.W. and that she did not recall ever looking at M.W.'s face.   Napier also claimed that she did not see M.W. hit her head when she fell down the stairs.

{¶ 25} It is unclear from Reese's brief whether he is alleging that M.W. sustained her injuries from falling down the stairs.   If he is, Napier's testimony does not support that claim, because Napier did not testify to M.W.'s being injured after falling.   In addition, some of the injuries at issue, i.e., two black eyes, are not consistent with falling down the stairs.   This is especially true here, given that Napier testified that M.W. did not hit her head when she fell.

{¶ 26} That said, it was within the province of the trial court to determine whether M.W.'s version of the incident was more credible than that of the defense witnesses. It is well established that " ' [a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio 4596, ¶ 33, quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. (Other citations omitted.)

{¶ 27} In this case, the trial court found M.W.'s version of the incident more credible. Upon review, we find that such a decision was not against the manifest weight of the evidence. In so holding, we note that M.W.'s version of the incident was supported by the photographic evidence of her injuries. The injuries depicted in the photographs were consistent with M.W.'s testimony that she had been placed in a choke hold and then punched several times in the face, head, and ribs. The injuries also included defensive wounds on M.W.'s forearms and a dislocated thumb, which were consistent with M.W.'s testimony that she used her arms to block Reese's punches and to push his arm away from her.

{¶ 28} The record further indicates that M.W.'s version of events was supported by the testimony of her mother and Officer Ambrose, who testified to observing M.W.'s injuries and to hearing statements from M.W. naming Reese as her assailant. The fact that M.W. obtained a protection order against Reese and reported the incident to police further supported her version of events in that these actions showed she was fearful of Reese.

{¶ 29} For the foregoing reasons, we cannot say that the evidence weighed heavily

against a conviction or that a manifest miscarriage of justice occurred. Therefore, in addition to being supported by sufficient evidence, the trial court's judgment finding Reese guilty of domestic violence was also not against the manifest weight of the evidence. Because Reese's guilty verdict was supported by sufficient evidence and was not against the manifest weight of the evidence, his assignment of error is overruled.

## Conclusion

{¶ 30} Having overruled Reese's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Matthew Kortjohn
Andrew Sexton
Jennifer S. Getty
Hon. Deirdre E. Logan