[Cite as *State v. Price*, 2022-Ohio-3945.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29344 |
| | : | |
| v. | : | Trial Court Case No. 21-CRB-2629 |
| | : | |
| TIEYA PRICE | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 & BRIAN B. GRAVUNDER, Atty. Reg. No. 0091187, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. No. 0029406, P.O. Box 751192, Dayton, Ohio 45475
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Tieya Price was found guilty following a bench trial in the Dayton Municipal Court on two counts of criminal damaging or endangering, in violation of R.C. 2909.06(A)(1) and (2), both misdemeanors of the second degree. The court merged the two counts, sentenced Price to 90 days in the Montgomery County Jail, which were suspended, and placed her on six months of basic supervision. The court ordered Price to complete an anger management program and to pay restitution of $248.38 and court costs. The court ordered Price not to contact the victim, Rosa Dillard. Price appeals from her conviction. The municipal court granted Price's motion for a stay pending appeal. We affirm the judgment of the trial court.

{¶ 2} Price was charged by complaint on August 3, 2021, and she pled not guilty. The bench trial was conducted on September 13, 2021. Rosa Dillard testified that she was acquainted with Price, who was her neighbor at the Cornell Ridge Apartments. Dillard testified that on July 18, 2021, her children awakened her and told her that Price was outside yelling for Dillard "to come outside because it wasn't over"; Price's daughter was with her, and they were in a white vehicle. When Dillard went outside, she saw Price walking away from Dillard's son and getting back into the white vehicle. According to Dillard, Price's daughter was "hanging out the window," and another woman that Dillard did not know was driving the vehicle. Dillard stated that she and Price "had words back and forth," then Price got in the car and left.

{¶ 3} Dillard testified that less than five minutes later, as she and her daughter were sitting on the porch, Price returned in a black vehicle, and there was a white vehicle behind it. Dillard had moved her car to the other side of the parking lot because Price had

previously "flattened [her] tires and spray painted the car"; Dillard's car was also parked near a light. According to Dillard, Price got out of the black car, went around to the front of Dillard's car with a "big, explosive firework," lit it, ran back to her vehicle, and sped off; "then it was boom, smoke everywhere. It busted [her] radiator." Dillard testified that her car was "smoking really bad" and water was coming from under the car.

{¶ 4} Dillard presented photographs she had taken when she bought the car in March 2021 and after the damage. She explained that whatever was put under the car had broken the plastic that had been protecting the radiator and damaged the radiator. She also presented pictures of the fluid coming out from under her car on the night in question, "debris" around the vehicle, which Dillard identified as "the plastic that tore up under the vehicle," and the "underneath" of her vehicle.

{¶ 5} Dillard stated that "[a]ll of the neighbors" came out in response to the "really loud" sound caused by the device, and she was afraid to touch her vehicle "for a minute because [she] didn't know if it was going to blow up or anything," it was "very smoky," and it was "making a grinding noise," even though the car was off. Dillard stated that, after Price sped off, she (Dillard) observed a park ranger at a stop light; the ranger followed Price's vehicle for "a little bit," then came back less than five minutes later to see what had happened.

{¶ 6} On cross-examination, Dillard stated that her son and daughter, who were 15 and 13 years old at the time, had had friends staying over on the night of this incident; while she slept, they were outside on the porch. Dillard testified that she observed Price swing a bottle at her son when she came outside. Dillard stated that she saw Price "bending down"

by Dillard's car but did not see anything in her hands. According to Dillard, Price walked away "really fast" as she left and "wasn't all the way out of the parking lot before it exploded." Dillard stated that there had been previous incidents between her and Price.

{¶ 7} Ramya Lewis, Dillard's daughter, testified that Price had lived near her for two to three years. She stated that on the date of the incident, she, her brother, and her friend were in her room when they heard Price banging on the door and "yelling for [her] mom to come outside." Lewis stated that her brother "opened up the door and went out," and Price was "by her car," "yelling with a bottle in her hand trying to hit him with it." Lewis stated that she had remained inside the screen door, but she could hear and see what was going on outside.

{¶ 8} Lewis stated that Price appeared to be "drunk" and that she was "talking like she couldn't speak clearly and * * * walking like she was wobbling." Lewis testified that she went to wake Dillard, and when she returned to the door, her brother was walking into the house, Price was driving off, and Price's daughter was "out the window yelling." Lewis stated that she and Dillard sat on the porch to see if Price would come back, which she did after five or ten minutes. According to Lewis, Price "had the firework" and "was flaming it up and * * * threw it under the car" before running back to her vehicle and pulling away. Lewis testified that she had seen the firework in Price's hands and that it was "long," but she could not provide any additional description. When asked what made her think it was a firework, Lewis responded, "The way it sounded." Lewis stated that she was "two or three cars away" from Price when she saw Price put something under the car. Lewis stated that she observed a flame and that it looked "[l]ike it was a lighter."

{¶ 9} When asked to describe the sound she heard while Price was departing, Lewis stated that it was "a big ol' boom" with lots of smoke coming out from under Dillard's car. Lewis stated that she did not see damage to the vehicle because it was underneath the car, and she said "oil" was leaking from under it.

{¶ 10} On cross-examination, Lewis stated that Price had left in a black van after the initial confrontation and then returned a short time later in the black van with a white car; she observed Price exit the black van upon her return and approach Dillard's vehicle. Lewis stated that she observed Price light something, and "[s]he bent down and threw it under there." Lewis stated that Price then got back into the black van. She acknowledged that she did not see what Price actually put under the car. On redirect, Lewis stated that she was familiar with the sound of firecrackers and, based upon what she heard, she believed the item placed under her mother's vehicle was a firecracker.

{¶ 11} Darnell Williams, Dillard's son, testified that on the night of the incident, he "was sitting outside late night" with his friends when Price, who lived in the neighborhood, came with two cars, one white and one black. Williams testified that Price got out of a car looking for his mom with a bottle in her hand. Williams told Price his mom was asleep; Price told Williams to go get his mom. Williams stated that Price "got out of the car all crazy," appeared drunk, and was carrying a Hennessey bottle in her right hand. Williams testified that, if he "would try to run up, she would run at me with the bottle." He stated that Price's daughter "got out of the car all loud and stuff," then they all got back in the car and drove off.

{¶ 12} Williams stated that he went inside to sleep and heard a "big ol' boom." He testified that he was familiar with the sound of a firework and the noise he heard was similar

to a firework. Williams compared the sound to when a guy set off fireworks in a field every Fourth of July, and bugs "would be falling from the trees" and "it would put a hole in the ground." Williams testified that the bottom of the car "ripped open" and there was a "black thing" hanging under it "from the explosion."

{¶ 13} On cross-examination, Williams stated that he was on the front porch with Lewis and her friend around 4:00 a.m. when Price initially arrived, and she got out of a black car. He testified that he did not see Price do anything to Dillard's car because he was inside at the time.

{¶ 14} David Adkins, a ranger for Five Rivers Metro Parks, testified that he was working in the early morning hours on the day of the incident. He was sitting in his vehicle at the corner of Cornell and Gettysburg when he "heard a loud explosion or bang" behind his car. He testified as to what happened after the explosion:

> I pulled into the intersection because I didn't know what was going on, if it was right behind me. As I looked off to my right towards the apartments, [near 2000 Cornell Ridge Drive], I saw smoke coming out from under a car. I saw a medium sized darker crossover vehicle of some type coming out of the parking lot at a high rate of speed. It came down to the intersection of Cornell and Gettysburg, where I was still sitting. We were kind of facing each other for a minute. It turned right on Gettysburg and accelerated up the street at a quick pace. We then turned right on, I believe, Necco, but it might have been one block up.

> The vehicle pulled to the side of the road. I started to pull to the side

of the road behind it. I looked at the plate, I typed the plate into my car computer real quick. As I was typing it in, the vehicle rapidly accelerated away. I hadn't turned on my lightbar or anything at that time. It went up a block, turned to the left. I turned my lightbar on. It accelerated away at a very high rate of speed out towards Gettysburg and I wound up losing sight of the vehicle.

{¶ 15} Adkins testified that the license plate came back to Price but it didn't match "the vehicle that it was on." Adkins testified that he "searched the computer" and found "a parking incident * * * where that license plate was found on another vehicle." Adkins thought "off the top of [his] head" that it was a "Buick crossover type of vehicle" and that that call had been tied back to Price.

{¶ 16} Adkins stated that he proceeded to the Cornell Ridge apartments to investigate the smoke, and he observed Dillard and her children standing by the smoking vehicle. According to Adkins, "it was pretty obvious from the smoke that something had been detonated under the vehicle." In speaking to Dillard, Adkins stated that she was "trying to remember the name of the person that, eventually, after she did a lot of digging and looking up the name was Tieya Price," which matched what Adkins had obtained from the vehicle registration. Adkins stated that he did not attempt to contact Price and told Dillard to call the Dayton Police Department about the damage to her vehicle.

{¶ 17} On cross-examination, Adkins stated that he could not see how many people were in the vehicle that drove away. Adkins stated that he did not activate his lightbar because he wanted to "catch up to it enough to get the plate because of the way it was

driving. I was pretty much guessing it was going to run." He stated that the vehicle was the only one he observed exiting the parking lot. Adkins stated that, although he spoke to Dillard, he did not "climb under the vehicle" or "specifically see major damage."

{¶ 18} When asked if Dillard had known Price by name, Adkins replied that Dillard knew a nickname and "was trying to find her on Facebook or somewhere" on her phone. Adkins also stated that he wasn't sure he had the plate right "until [he] found the other call where the similar vehicle was on it with that license plate." Regarding the license plate, Adkins stated, "if I remember right, it came back to, I think it was a white chevy."

{¶ 19} Officer Joseph Drumm of the Dayton Police Department testified that he took Dillard's complaint after she called to report criminal damaging based on someone's firing off an explosive underneath the front of her vehicle. Drumm observed the damage to the vehicle. According to Drumm, Dillard had a Pontiac G6 and black plastic had been hanging down under the front of it; there had also been a piece of plastic laying to the side and a puddle of fluid under the car. He testified that Dillard's pictures (State's Exhibits 1-B, 1-C, and I-E) depicted the damage to the vehicle that he had observed, which "appear[ed] to be the result of an explosion." On cross-examination, Drumm stated that had had no contact with Price and had done no further investigation beyond speaking to Dillard.

{¶ 20} After Drumm testified, the State rested, and the court overruled defense counsel's Crim.R. 29 motion for aquittal.

{¶ 21} Price testified that she lived on Cornell Ridge Drive on the date of this incident (July 18, 2021), and Dillard was her neighbor. Price stated that she was not at or near Dillard's residence on that date and that she did not own a vehicle; she had last had a vehicle

two or three years previously, and she rode the bus. Price stated that she had no knowledge of any events at Cornell Ridge Drive on the date of the incident and was at home with her four children at the time.

{¶ 22} On cross-examination, Price acknowledged that she and Dillard "had a problem." When asked if she liked Dillard, Price responded, "I love everybody, Ma'am" and "[w]e just pray about it." Price denied drinking on the night of the incident or demanding that Dillard come out of her home. She also testified that she did not leave and then return to the scene, put something combustible under Dillard's car, or speed away in a vehicle with tags registered to her. When asked to explain the circumstances, Price replied, "How can I explain something when I was never there?"

{¶ 23} At the conclusion of Price's testimony, the court found that the State had proven criminal damaging beyond a reasonable doubt and imposed sentence as described above.

{¶ 24} On appeal, Price's brief asserts three "proposed rule[s] of law" but lists only two assignments of error. We will consider her arguments together. They are:

A CONVICTION FOR CRIMINAL DAMAGING BY THE USE OF AN EXPLOSIVE IS INSUFFICIENT TO SUSTAIN THE CONVICTION WHERE THERE IS NO PHYSICAL EVIDENCE OF ANY EXPLOSIVE.

WITHOUT PHYSICAL OR SCIENTIFIC EVIDENCE MERE PRESENCE OF A DEFENDANT AT THE SCENE OF A CRIME IS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THE DEFENDANT CRIMINALLY DAMAGED COMPLAINANT'S PROPERTY.

THE TRIAL COURT'S VERDICT WAS AGAINST THE MANIFFEST WEIGHT OF THE EVIDENCE WHEN WITNESSES['] TESTIMONY DO NOT SUPPORT THE DEFENDANT PERFORMED ANY ACT WHICH CONSTITUTED CRIMINAL DAMAGING.

{¶ 25} Price asserts that the prosecution "utilized stacked inferences" to prove its case beyond a reasonable doubt. She argues that R.C. 2909.06 required the State to prove that she used an explosive or explosive device to damage Dillard's property, which it failed to do, because "none of the witnesses" observed a firecracker in Price's possession. She characterizes Lewis's testimony as "confused" and asserts that Lewis "recanted her testimony" when she testified that she did not see what was thrown or placed under the car. With respect to Williams's testimony, Price points out that Williams was inside at the time of the "boom" and did not observe her do anything before the sound.

{¶ 26} Price notes that Ranger Adkins did not see the driver of the vehicle that sped off after the explosion, and Officer Drumm merely took the report and did not investigate further. She asserts that no evidence "was collected to test for explosive residue" or to identify the fluid that was leaking out of the vehicle, and she argues that a "conclusion that [she] used an explosive to cause damage to a car cannot and should not be made without scientific tests to demonstrate the presence of explosives." She argues that, based on the evidence presented, it was impossible to determine whether the damage to the car was "from an explosive or a malfunction of the car." Price analogizes this case to *State v. Bullitt*, 166 Ohio App.3d 365, 2006-Ohio-2304, 850 N.E.2d 801 (8th Dist.), arguing that "one cannot be convicted of cocaine possession without a scientific report demonstrating a substance

was cocaine." Price asserts that no rational trier of fact could have found her guilty beyond a reasonable doubt, when the evidence only established that she was present, except through "impermissible inference stacking." According to Price, "[p]resence does not equal criminal culpability" and the trial court could not have reasonably concluded that she delivered and detonated an explosive.

{¶ 27} The State responds that the evidence established that Price got out of her vehicle, walked to Dillard's car holding an explosive, knelt by the car, lit the explosive, threw it under the car, ran back to her vehicle, and sped away. The State asserts that if Price had been at home, as she claimed, then she was at the scene of the crime, because Dillard was her neighbor. The State asserts that Price knowingly caused and created a substantial risk of physical harm to Dillard's property recklessly by means of an explosion and that the evidence weighed heavily in favor of conviction.

{¶ 28} The State argues that R.C. 2909.06(A) contains no requirement that the State prove the existence of an explosive through physical or scientific evidence or eliminate other causes of an explosion. It points out that Price offers no authority for the propositions that these elements must be proven other than citing to a decision involving possession of cocaine. The State notes that R.C. 2909.06 does not define "explosion."

{¶ 29} This Court has noted:

"A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*,

78 Ohio St.3d 380, 678 N.E.2d 541 (1997). We apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

When reviewing a weight of the evidence challenge, a court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

Further, while "sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the

analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 17. Accordingly, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

Additionally, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24.

*State v. Sizemore*, 2d Dist. Montgomery No. 28817, 2021-Ohio-4159, ¶ 13-16.

{¶ 30} R.C. 2909.06 provides:

(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:

(1) Knowingly, by any means;

(2) Recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance.

**{¶ 31}** R.C. 2901.22 states:

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

(C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶ 32}** We conclude that Price's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. The court observed each witness testify, and it clearly credited the testimony of the State's witnesses over that of Price. We

defer to the court's assessment of credibility. Dillard, Lewis, Williams, and Adkins each described hearing a loud explosion that they associated with Price's presence at the scene. Dillard, Lewis, and Williams described Price's initial menacing conduct in demanding that Dillard come outside while waiving a bottle, and Dillard and Lewis described Price's later approaching the front of Dillard's vehicle prior to the explosion. Dillard testified that Price was "bending down by the car," and Lewis stated that she observed a flame that looked like a lighter.

{¶ 33} Dillard identified photos of the damage to her vehicle. These photos depicted broken black plastic and some type of leaked liquid on the ground. Dillard stated that "all of the neighbors" came out in response to the sound of the "boom." She testified that she suspected that Price had detonated "a big, explosive firework." Lewis testified that she thought Price had detonated a firecracker based upon the sound of the explosion, Williams testified that it sounded like a firework, and Adkins testified that he heard a loud explosion. Adkins linked Price to the incident by means of her license plate after observing a vehicle speeding away from the parking lot following the explosion. Adkins further testified that "it was pretty obvious from the smoke that something had been detonated under the vehicle." Drumm testified that the damage to Dillard's vehicle appeared "to be the result of an explosion."

{¶ 34} Price's reliance on *Bullitt,* 166 Ohio App.3d 365, 2006-Ohio-2304, 850 N.E.2d 801, is misplaced. In that case, Bullitt and his co-defendant (Webb) were arrested after police, using binoculars, observed them engage in what appeared to be a drug transaction. *Id.* at ¶ 5-6. The police found "a rock of suspected cocaine" on the ground next to Webb's

feet and found two crack pipes on his person. *Id.* at ¶ 8. The suspected crack cocaine and pipes were the only items admitted into evidence. *Id.* The Eighth District vacated Bullitt's conviction, determining that "there was no evidence as to any analysis of the purported cocaine or residue, if any, on the crack pipes. The only testimony offered by the state in an attempt to prove that a controlled substance was involved in this case was that the rock appeared to be crack cocaine and that the crack pipes were recovered from Webb. *Id.* at ¶ 17. The court found that evidence was insufficient to prove that Bullitt had "sold, obtained, possessed, or used crack cocaine." *Id.*

{¶ 35} As the State notes, it was not required to prove the existence of an explosion through scientific evidence or eliminate other causes of the explosion, such as the vehicle's malfunctioning on its own. Moreover, Price's connection to the explosion was less tenuous than the one in *Bullitt.* Multiple witnesses' testimony about the loud sound, heavy smoke, and damage to the vehicle established that an explosion had occurred. Based on this testimony, the trial court could have reasonably concluded, without improperly "stacking inferences," that Price, while in some sort of ongoing dispute with Dillard, knowingly approached the front of Dillard's vehicle with something that was combustible when ignited, recklessly ignited it, placed it under the front of the vehicle, and then fled the scene as the explosion occurred.

{¶ 36} After reviewing all the evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of R.C. 2909.06(A)(1) and (2) proven beyond a reasonable doubt, and that Price's conviction was not against the manifest weight of the evidence.

{¶ 37} Price's assignments of error are overruled.

{¶ 38}  The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Stephanie L. Cook
Brian B. Gavunder
Andrew D. Sexton
Richard L. Kaplan
Hon. Mia Wortham Spells