[Cite as *State v. Chasteen*, 2025-Ohio-5546.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

    Appellee

v.

GLENN J. CHASTEEN

    Appellant

:
:  C.A. No. 30378
:
:  Trial Court Case No. 24CRB01810
:
:  (Criminal Appeal from Municipal Court)
:
:  **FINAL JUDGMENT ENTRY &**
:  **OPINION**
:

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 12, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and LEWIS, J., concur.

CHRIS BECK, Attorney for Appellant
JOHN D. EVERETT, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Glenn Chasteen appeals from the trial court's judgment finding him guilty of one count of domestic violence and one count of assault, both first-degree misdemeanors, following a bench trial. According to Chasteen, the court's guilty findings were based on insufficient evidence and were against the manifest weight of the evidence because the victim did not have any marks on her body the night of the incident. We disagree and find that the trial court's guilty findings were properly supported by the evidence.

{¶ 2} The evidence presented during the bench trial reveals that Chasteen caused or attempted to cause physical harm to the victim. The victim testified that she suffered a pain-inducing blow and had subsequent bruising and pain. She was not required to show that she had marks on her body the night of the incident. The statutes in question also allow a guilty finding upon a determination that a defendant had attempted to cause physical harm; they do not require that the defendant succeeded in causing physical harm. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Course of Proceedings

{¶ 3} On November 27, 2024, criminal complaints were filed in Kettering Municipal Court charging Chasteen with domestic violence in violation of R.C. 2919.25(A) and assault in violation of R.C. 2903.13(A). The victim of the alleged crimes was C.W., Chasteen's ex-girlfriend. On November 27, C.W. filed a request for a temporary protection order, which the court granted.

{¶ 4} After Chasteen pled not guilty, the matter was assigned to a visiting judge, who held a bench trial on December 20, 2024. The judge subsequently filed an entry finding that the State had proven Chasteen's guilt of both charges beyond a reasonable doubt. At the sentencing hearing, the court merged the offenses and chose to sentence Chasteen on the assault charge. The court imposed a sentence of 180 days in jail with 135 days suspended and a $500 fine with the entire balance of the fine suspended. The court gave Chasteen 45 days of jail credit, placed him on non-reporting probation for two years, and ordered him to have no contact with the victim for two years. Chasteen timely appealed from the judgment.

## II. Manifest Weight and Sufficiency of the Evidence

{¶ 5} In support of his appeal, Chasteen has asserted two assignments of error, which we consider together. The alleged errors are as follows:

THE STATE PRESENTED INSUFFICIENT EVIDENCE TO PROVE EVERY ESSENTIAL ELEMENT OF DOMESTIC VIOLENCE O.R.C. 2919.25 AND ASSAULT, O.R.C. 2903.13 BEYOND A REASONABLE DOUBT.

MR. CHASTEEN'S CONVICTIONS FOR DOMESTIC VIOLENCE AND ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Before discussing these alleged errors, we outline the standards of review.

### A. Standards of Review

{¶ 7} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of

3

the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id*.

{¶ 8} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson* at ¶ 14.

{¶ 9} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). *Accord State v. Winbush*, 2017-Ohio-696, ¶ 58 (2d Dist.). "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" (Citations omitted.) *State v. Farra*, 2022-Ohio-1421, ¶ 51 (2d Dist.), quoting *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 10} As a further matter, during manifest weight review, we defer to a trial court's

4

credibility decisions. *State v. Stevenson*, 2016-Ohio-321, ¶ 9 (2d Dist.), citing *State v. Vencill*, 2012-Ohio-4419, ¶ 11 (10th Dist.). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). *Accord State v. Anderson*, 2025-Ohio-1673, ¶ 15 (2d Dist.).

**B. Discussion**

{¶ 11} As noted, the court found Chasteen guilty of domestic violence in violation of R.C. 2919.25(A). This statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The court also found Chasteen guilty of assault under R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." According to Chasteen, the State failed to prove that he knowingly caused physical harm or that any physical harm was caused. In this regard, Chasteen contends there was no evidence that he struck or pushed C.W., and there were no marks on her back.

{¶ 12} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

5

R.C. 2901.01(A)(3). After reviewing the record, we find no error on the trial court's part.

{¶ 13} At trial, the State presented testimony from the victim, C.W., and from Andrew C., the victim's friend and ex-boyfriend. C.W. testified that she met Chasteen in 2020 or 2021 when she was 19 or 20 years old, and Chasteen moved into her apartment quickly after they met. The couple lived together for about six months, but Chasteen then went to prison for about three years. When Chasteen was released from prison, he immediately moved into C.W.'s house, and they were in a domestic relationship. On November 26, 2024, C.W. returned home after being in Florida for about two weeks. By this point, C.W. and Chasteen had broken up. C.W. drove to her house to pick up some clothes and a few other things. At that time, C.W. was accompanied by Andrew C., who came along for protection. C.W. told Andrew to stay in the car, as she did not want him to have any conflict with Chasteen. After C.W. went inside the house, she gathered about three bins of belongings and was quietly trying to get them to the front door because Chasteen was asleep and she did not want to wake him. Unfortunately, Chasteen woke up, and C.W. was nervous because she assumed there was going to be a fight. She thought that because there was always a fight. Tr. 8-10, 27, 30, 32, 33, 34.

{¶ 14} Chasteen asked C.W. where she was going, and she told him she was planning to go back to Florida. C.W. also told Chasteen she was going to a storage unit because she did not want him to know that Andrew was there with her or that he had been in Florida with her. This was for C.W.'s own safety because Chasteen had destroyed her living room in the past. However, even though they had already broken up, Chasteen was still upset she was leaving. An argument started and became heated, and Chasteen tried to block C.W.'s path. C.W. asked him to leave the house and to leave her alone, but at some point, Chasteen called the police to try and get them to charge C.W. with trespassing. This

6

was C.W.'s home; she was on the lease and Chasteen was not. She also paid all the bills for the house. C.W. ended up calling the police herself, telling them that she would like Chasteen removed from the property and that she feared for her safety. Tr. 34, 35, 38, 39.

{¶ 15} When C.W. asked Chasteen to get out of her space, Chasteen said, "You going to f***ing hit me or something? I dare you to f***ing hit. I wish you would f***ing hit me. You know it would be my f***ing dream for you to hit me, b**ch because I swear to God I'll take you to the ground. I'll f***ing kill you." Tr. 39.

{¶ 16} The verbal abuse continued, and Chasteen then got in C.W.'s face. He was 6'4" and weighed 250 pounds, while C.W. was 5'3" and weighed 100 pounds. At that point, C.W. was standing in front of the edge of the kitchen counter with her back to the counter, and Chasteen was nose to nose with her. Chasteen shoved C.W., chest bumping her into the edge of the countertop. C.W.'s tailbone hit the corner of the kitchen counter. She knew if she hit Chasteen back, he would take her to the ground, so she grabbed whatever she could find in the kitchen behind her, which was a shoe-shaped perfume boot. C.W. threw the bottle at the floor. It shattered, and C.W. then ran from the kitchen counter to the front door. Tr. 39-40, 43.

{¶ 17} C.W. testified that when she hit the counter, it hurt, because Chasteen is a very strong man. When he got in this angry mode where he blacked out, he would forget she was a 23-year-old woman and tried to fight her like she was a 200-pound man in prison. C.W. ran outside crying and screaming and asked Andrew to get out of the car to help her. Andrew got out, ran up, and he and Chasteen began arguing. Someone on the street called the police. Because Chasteen was trying to provoke Andrew, C.W. was trying to get Andrew back in the car. According to C.W., when the police arrived, she drove up the street to talk to them and to avoid Chasteen. Tr. 44-49.

7

{¶ 18} C.W. testified that she developed a bruise on her tailbone. It did not appear that night but developed later. She also said her breast implants really hurt for about a week and a half after the incident. C.W. contacted her doctor because she thought maybe the implants had been ruptured, but an x-ray showed they were fine. The intensity of the chest bump was like what one would see two football players do. Tr. 50-51, 78. During cross-examination, C.W. said she was pretty sure the police had taken a photo of her back that night, and she agreed the photo did not show any marks on her back. Tr. 71-72.

{¶ 19} Andrew's testimony was consistent with C.W.'s account. Andrew stated that he sat in the car for about 45 minutes because he did not want to escalate things by going in the house. He got a little impatient, so he decided to call C.W. While he was on the phone with her, he heard C.W. and Chasteen arguing and a ruckus like someone was pushed into something. After about a minute on the phone, C.W. ran out of the house. She was running frantically, was crying and screaming, and looked terrified. C.W. asked the neighbors to help, and they ended up coming outside. When Chasteen came out of the house, Andrew got between Chasteen and C.W. to make sure if Chasteen hurt anyone, it would be Andrew, not C.W. Then they just argued. Andrew tried to keep Chasteen arguing with him until the police arrived. After the interaction with Chasteen concluded, Andrew and C.W. decided to remove themselves from the scene. C.W. drove away, and when the police arrived, C.W. and Andrew pulled over and spoke with them. Tr. 11, 13, 14 17-18. Chasteen did not present any witnesses at trial, nor did he testify.

{¶ 20} After reviewing the evidence, we find that the trial court's guilty findings were not against the manifest weight of the evidence. The trial court clearly believed C.W. and Andrew, and we defer to the court's credibility decisions, as it was in the best position to see and hear the witnesses.

**{¶ 21}** Furthermore, C.W. did not need to have a mark on her back immediately after the assault. Given the injury to which C.W. testified, i.e., pain in her tailbone and pain in her breast implants, the injury met the criteria of "physical harm" under R.C. 2919.25(A) and 2901.01(A)(3), which includes "any injury no matter how slight." *State v. Barnes*, 2019-Ohio-2634, ¶ 24 (3d Dist.), citing *State v. Torman*, 2016-Ohio-748, ¶ 31-32 (3d Dist.). When a large person body-slams someone against a hard counter, he would know that a certain result, an injury, would occur. In addition, actual physical harm is not required, because a violation of R.C. 2919.25(A) includes an attempt to harm.

**{¶ 22}** The relevant part of the assault statute, R.C. 2903.13(A), contains the same requirements, i.e., that the defendant must cause or attempt to cause physical harm. Consequently, the same reasoning applies. We have also previously said that "a pain-inducing blow is sufficient to satisfy the 'physical harm' element of Assault." *State v. Hill*, 2005-Ohio-3701, ¶ 34 (2d Dist.). On the record here, C.W. suffered a pain-inducing blow, and based on her testimony, Chasteen caused or attempted to cause her physical harm. The assault conviction, therefore, is also not against the manifest weight of the evidence.

**{¶ 23}** Because the sufficiency question is subsumed in the manifest weight findings, the trial court's guilty findings were necessarily supported by sufficient evidence. Accordingly, both of Casteen's assignments of error lack merit, and the first and second assignments of error are overruled.

### III. Conclusion

**{¶ 24}** Both of Chasteen's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and LEWIS, J., concur.

9